UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WOODROW FLEMMING,

                        Plaintiff,

   -v-                                           9:09-CV-1242

BEZALEL WURZBERGER; TIMOTHY KEMP;
and LOUISE TICHENOR,

                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                 OF COUNSEL:

WOODROW FLEMMING
Plaintiff, Pro Se
03-A-5259
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

HON. ERIC T. SCHNEIDERMAN            MICHAEL G. MCCARTIN, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

     Plaintiff Woodrow Flemming ("plaintiff" or "Flemming"), a New York state prison inmate proceeding pro se and in forma pauperis, commenced this action pursuant to 42 U.S.C. § 1983 alleging that defendants violated his civil rights. Specifically, plaintiff alleges

that defendants Dr. Bezalel Wurzberger, psychiatrist ("Dr. Wurzberger") and Timothy Kemp, social worker ("Kemp")—employees of the New York State Office of Mental Health—and Louise Tichenor ("Tichenor"), a physician's assistant formerly employed by the New York State Department of Correctional Services ("DOCS"), retaliated against him in violation of the First Amendment and deprived him of due process in violation of the Fifth Amendment.

Plaintiff initially filed this action on May 16, 2005, in the Western District of New York. Dkt. No. 1.  In June 2007 defendants' motion for summary judgment was granted, and the complaint was dismissed. Flemming v. Wurzberger, 490 F. Supp. 2d 320, 324–25 (W.D.N.Y. 2007).[1] In April 2009, however, the Second Circuit vacated part of the 2007 order and remanded the case to permit plaintiff to file an amended complaint asserting the current due process and retaliation claims against these three defendants. Flemming v. Wurzberger, 322 F. App'x 69, 72 (2d Cir. 2009) (summary order). Plaintiff filed a second amended complaint in the Western District of New York on July 10, 2009. Dkt. No. 46.  On November 6, 2009, the case was transferred from the Western District to the Northern District of New York. Dkt. No. 56.

Defendants have moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Dkt. No. 107.  Plaintiff opposes the motion. Dkt. Nos. 112, 120, 121, 149, 169.  Plaintiff has also filed a motion for preliminary injunction. Dkt. No. 167.  The motions were considered on submit.

---

[1] This order dismissed Flemming's Eighth Amendment deliberate indifference claim, which was deemed the only cognizable claim asserted in the complaint. The court noted that "[i]n his motion papers, plaintiff refers to, or attempts to raise, a number of claims, such as a First Amendment retaliation claim, a Fourteenth Amendment equal protection claim, and a Fifth Amendment due process claim, that are not contained in the complaint." Id. at 324.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following pertinent facts are undisputed. From December 2003 to April 2005, Flemming was incarcerated at the Walsh Correctional Facility Regional Medical Unit ("Walsh RMU") in Rome, New York. While housed at the Walsh RMU, plaintiff received ongoing medical care for various physical and mental health conditions including depression, anxiety, hypertension, a heart condition, sleep apnea, and back, leg, and shoulder problems. At some point prior to April 5, 2005, plaintiff received a disciplinary charge, which prompted a Tier III disciplinary hearing.[2] Plaintiff was subsequently sentenced to an extended period of time in the Special Housing Unit ("SHU").

As a result of the disciplinary charge and hearing disposition, Flemming was transferred from the Walsh RMU to the SHU at Upstate Correctional Facility ("Upstate SHU") on April 5, 2005. Plaintiff first met Tichenor and Kemp, who both worked at Upstate, upon his arrival on April 5. Plaintiff met Dr. Wurzberger, who worked out of Coxsackie Correctional Facility, a few days later via videoconference. Plaintiff reportedly met with Dr. Wurzberger every ninety days thereafter via videoconference to monitor plaintiff's mental health condition and manage his medications.

## III. DISCUSSION

Flemming alleges that defendants conspired to have him transferred from the Walsh RMU to the Upstate SHU. Plaintiff maintains that the Upstate SHU was not equipped to provide the ongoing medical care he needed and was receiving at the Walsh RMU. Plaintiff

---

[2] It is unclear what plaintiff was charged with. In his deposition, plaintiff claimed he had merely refused a direct order. McCartin Decl., Ex. A, Dkt. No. 107-3, 35 ("Pl.'s Dep. Tr."). However, an inmate transfer form dated April 4, 2005, notes that plaintiff was serving SHU time until January 12, 2007, for "violent conduct, harassment and threats." Dkt. No. 149, 9.

claims that this transfer was in retaliation for his filing of grievances and lawsuits against DOCS employees. Plaintiff also asserts that the transfer deprived him of due process.

### A. Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250, 106 S. Ct. at 2511; Fed. R. Civ. P. 56(e).

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."

Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict"). Finally, when a party seeks summary judgment against a pro se litigant, the non-movant must be afforded special solicitude. See Sealed Plaintiff v. Sealed Defendant No. 1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, . . . a court is obliged to construe his pleadings liberally.'" (quoting McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004))).

### B. Personal Involvement

Defendants argue that they were not personally involved in the conduct that allegedly violated Flemming's constitutional rights; to wit, the decision to transfer him from the Walsh RMU to the Upstate SHU.

The personal involvement of defendants is an essential element of a § 1983 claim. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Further, "[a] plaintiff must thus allege a tangible connection between the acts of a defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).

Plaintiff's claims stem from his transfer from the Walsh RMU to the Upstate SHU in April 2005. It is undisputed that plaintiff was transferred in order to serve time in the SHU following a Tier III disciplinary hearing. Plaintiff acknowledges that defendants did not work at the Walsh RMU, were not involved in the incident that led to his disciplinary charges, were not involved in the subsequent disciplinary hearing, and had no part in the decision to sentence plaintiff to a lengthy stint in the SHU. Pl.'s Dep. Tr. at 38. In fact, the first time plaintiff even met these three defendants was after he arrived at the Upstate SHU. Plaintiff

implicates defendants in his transfer solely because they accepted him at the Upstate SHU. See id. at 138. This is insufficient to establish their personal involvement. There is nothing in the record to suggest these defendants—a psychiatrist, a social worker, and a physician's assistant—were involved in the decision to move inmates from one facility to another. Moreover, Flemming admits that he has no evidence or witnesses to testify to a tangible connection between any acts by defendants and his transfer. See id. at 142.

Accordingly, defendants' motion for summary judgment will be granted as Flemming fails to establish the personal involvement of defendants. As explained below, Flemming's claims also fail on the merits.

### C. Retaliation Claim

Plaintiff alleges that his transfer from the Walsh RMU to the Upstate SHU was the result of a broad conspiracy to retaliate against him for various grievances and lawsuits he filed against DOCS staff.[3]

Claims of retaliation are rooted in the First Amendment. See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004). Courts must view retaliation claims with care and skepticism due to the ease with which they can be fabricated and to avoid judicial intrusion into matters of prison administration. Jackson v. Onondaga Cnty., 549 F. Supp. 2d 204, 214–15 (N.D.N.Y. 2008) (McAvoy, S.J. & Lowe, M.J.). Conclusory allegations alone are insufficient. Id. at 214 (citing Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983)).

---

[3] To the extent Flemming attempts to state a § 1983 conspiracy claim, such a claim fails as there is nothing in the record to evidence a "meeting of the minds" between defendants and any co-conspirators. See Loria v. Butera, No. 5:09-CV-531, 2010 WL 3909884, at *6 (N.D.N.Y. Sept. 29, 2010) (Scullin, S.J.) ("[T]he plaintiff must also provide some details of time and place and the alleged effects of the conspiracy." (internal quotation marks omitted)). This claim also fails because, as discussed below, Flemming fails to establish that any of his constitutional rights were violated. See id. ("A violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right.").

While "[a] prisoner has no liberty interest in remaining at a particular correctional facility, . . . prison authorities may not transfer an inmate in retaliation for the exercise of constitutionally protected rights." Davis v. Kelly, 160 F.3d 917, 920 (2d Cir. 1998) (internal citations omitted). A plaintiff claiming retaliation must first show that the conduct at issue was constitutionally protected and, second, that the conduct was a "substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003). It is well-established that filing grievances and lawsuits is constitutionally protected conduct.[4] See Gill, 389 F.3d at 384; Gayle v. Gonyea, 313 F.3d 677, 682 (2d Cir. 2002). If the plaintiff establishes these elements, the burden shifts to the defendants who can still defeat the claim by showing, by a preponderance of the evidence, that they would have taken the same action against the plaintiff absent his exercising of the protected conduct. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996).

Plaintiff fails to show how his filing of grievances and lawsuits was a motivating factor for any of the defendants' actions. The two "prior" lawsuits plaintiff identified in his deposition were actually filed after his transfer to the Upstate SHU and after he filed this action, and these defendants were not named as defendants in either of those cases. See Pl.'s Dep. Tr. at 129–31; Flemming v. Goord, No. 9:06-CV-26 (filed on January 6, 2006); Flemming v. Rosadro, No. 9:06-CV-809 (filed on June 29, 2006).[5] Plaintiff acknowledges that, prior to his

---

[4] In his deposition, plaintiff also suggests that DOCS employees retaliated against him because of the nature of the crime for which he is incarcerated. However, criminal activity is not constitutionally protected conduct on which to base a retaliation claim. See United States v. Gagliardi, 506 F.3d 140, 148 (2d Cir. 2007) (noting that "[s]peech is not protected by the First Amendment when it is the very vehicle of the crime itself" (internal quotation marks omitted)).

[5] Flemming filed three federal civil actions prior to his transfer to the Upstate SHU on April 5, 2005. Defendants were not named in any of those lawsuits either. See Flemming v. New York, No. 9:05-CV-31; Flemming v. Payant, No. 9:05-CV-179; Flemming v. New York, No. 9:05-CV-406.

filing the current action, defendants were not aware of any of his prior lawsuits against DOCS employees. Pl.'s Dep. Tr. at 129.

Plaintiff also fails to identify which grievances allegedly motivated defendants to retaliate against him. Plaintiff acknowledges that defendants did not work at the Walsh RMU, where he was housed from December 2003 to April 5, 2005. Moreover, plaintiff did not even meet defendants until after he was transferred to the Upstate SHU. Therefore, the only reasonable inference is that defendants had no knowledge of, and were not named in, any of the grievances plaintiff filed prior to his April 2005 transfer. Flemming's conclusory assertion that defendants retaliated against him by conspiring to have him transferred to the Upstate SHU is thus without merit and does not establish an issue of material fact. See Wright v. Goord, 554 F.3d 255, 274 (2d Cir. 2009) (affirming the dismissal of a retaliation claim because defendant was not named in plaintiff's original grievance); Tafari v. McCarthy, 714 F. Supp. 2d 317, 373–74 (N.D.N.Y. 2010) (plaintiff could not establish any connection between the grievances he filed and defendants who were not named in the grievances).

Accordingly, defendants' motion for summary judgment will be granted as to the retaliation claim.

### D. Due Process Claim

Flemming alleges that he was deprived of due process when he was placed in the SHU and subsequently transferred to the Upstate SHU.[6] Plaintiff bases this claim on the fact that he did not receive a separate hearing—in addition to his Tier III disciplinary hearing—

---

[6] Plaintiff asserted the same claim against different defendants in a prior lawsuit. See Flemming v. Rosadro, No. 9:06-CV-809, 2008 WL 907364, at *3–4 (N.D.N.Y. Mar. 31, 2008) (Scullin, S.J. & Treece, M.J.). This claim was dismissed as Flemming failed to provide any factual support for his assertion that his placement in the SHU and transfer to the Upstate SHU was unconstitutional or otherwise improper. Id. at *4.

before being placed in the SHU.[7] Pl.'s Dep. Tr. at 57–59. However, plaintiff was not entitled to a separate hearing. It is well-established that a properly conducted Tier III disciplinary hearing provides sufficient due process for an inmate facing placement in the SHU. See Wolff v. McDonnell, 418 U.S. 539, 563–64, 94 S. Ct. 2963, 2978–79 (1974) (outlining the rights that must be afforded before revocation of good-time credits); Kalwasinski v. Morse, 201 F.3d 103, 108 (2d Cir. 1999) (per curiam) (holding that the rights detailed in Wolff must be provided to an inmate before placement in solitary confinement).

Flemming admits that he was afforded a Tier III hearing before being placed in the SHU, and he does not allege that any due process violations occurred during that hearing. Moreover, it is well-established that prisoners do not have a protected interest in the particular facility in which they are housed. Montanye v. Haymes, 427 U.S. 236, 243, 96 S. Ct. 2543, 2547 (1976); Matiyn v. Henderson, 841 F.2d 31, 34 (2d Cir. 1988). Therefore, Flemming's placement in the SHU and his subsequent transfer to Upstate were constitutional and did not violate his due process rights.

Accordingly, defendants' motion for summary judgment will be granted as to the due process claim.

---

[7] Due to the confusing, and partially illegible, nature of plaintiff's pleadings, his exact due process claim is unclear. His deposition testimony suggests this claim is based on the lack of a separate hearing before actually being transferred to the Upstate SHU. In the event this claim is based on an alleged disruption of the medical and mental health care Flemming was receiving at the Walsh RMU, such a claim is unsupported by the record. Indeed, plaintiff acknowledged that he remained under the care of a psychiatrist, albeit via videoconference, after his transfer. He also continued to receive his medications including Ultram, aspirin, Motrin, Nitroglycerin, Paxil, and water pills. Plaintiff was provided with a sleep apnea machine to help him sleep and was permitted to use a wheelchair or walking cane when necessary. See Pl.'s Dep. Tr. at 49–50, 55, 67, 78–80, 91, 106–08. The root of his due process claim is therefore his placement in the SHU and his transfer to Upstate.

### E. Qualified Immunity

Defendants assert that they are entitled to qualified immunity, which generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982). However, if no constitutional right would have been violated were the allegations established, "there is no necessity for further inquiries concerning qualified immunity." L.A. Cnty. v. Rettele, 550 U.S. 609, 616, 127 S. Ct. 1989, 1994 (2007) (internal quotation marks omitted).

Accordingly, the issue of qualified immunity need not be addressed because, as discussed above, plaintiff fails to allege a plausible constitutional claim against defendants.

### F. Plaintiff's Motion for Preliminary Injunction

As defendants' motion for summary judgment will be granted and plaintiff's complaint will be dismissed, plaintiff's motion for a preliminary injunction will be denied as moot. It is worth noting, however, that this motion would be moot even if defendants' motion for summary judgment was not granted. Plaintiff, who was transferred to Midstate Correctional Facility for a medical consultation in July 2011, seeks an injunction ordering him to be returned to Upstate and to be provided his sleep apnea machine and medication. However, Flemming has reportedly been returned to Upstate, rendering his motion moot. See Prins v. Coughlin, 76 F.3d 504, 506 (2d Cir. 1996) (per curiam) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility.").

## IV. CONCLUSION

Flemming fails to establish that defendants were personally involved in the conduct that allegedly violated his constitutional rights. Even if such personal involvement could be shown, however, there is nothing in the record to support his conclusory retaliation and due process claims.

Therefore, it is

ORDERED, that

1. Defendants' motion for summary judgment is GRANTED;

2. Plaintiff's complaint is DISMISSED with prejudice; and

3. Plaintiff's motion for preliminary injunction is DENIED as moot.

The Clerk is directed to enter judgment accordingly and close the file.

IT IS SO ORDERED.

Dated: August 23, 2011
       Utica, New York.

United States District Judge